Bissell, J.,
dissenting.
The algebraic representation of the unknown, quantity “ x ” probably well expresses the value and usefulness of a dissenting opinion in judicial proceedings. The universality of the custom coupled with the importance of the present inquiry has led to the labor and the possible encumbrance of the reports with this opinion.
I differ radically with my associates both in regard to the law which is applicable to the controversy and in regard to what the proof tends to establish. The stipulation of facts on which the case was tried is partially quoted in the principal opinion. It is assumed in it that what is quoted, together with what is stated, supplies the requisite proof to support the case and justify a reversal. I do not subscribe to that statement. Supplementing the quotation given in the opinion I now give the balance of the stipulation with reference to the warrants issued and amounts collected according to the terms of the document.
“ Delinquent tax due said road fund, De-
cember 31st, 1883 .... $12,966.39
Cash on hand . 1,246.32
Tax levy 1883 for road fund ... ., 10,953.69
Total .... $25,166.40
Of the delinquent tax of 1883, the sum of $3,068.85 was up to that time, Dec. 5th,
1883, declared unavailable, . . $3,068.85
$22,097.55
Amount carried forward $22,097.55.
*382 Amount brought forward .... §22,097.55 There were outstanding road warrants
drawn on said road fund . . §18,926.32
That in 1884, Dec. 31st, the delinquent unpaid tax due said road fund was the sum of §16,920.16
Cash on hand .... 247.42
Road tax levied and payable . . 15,396.18
Total
§32,563.76
Warrants drawn in 1884 §15,318.82
That in 1885, Dec. 31st, the account stood,
delinquent tax due the fund §16,421.56
Cash on hand .... 3,656.99
Taxes levied due the fund 12,052.52
Total credit . . . §32,131.07
Warrants issued, 1885, . . . 5,992.27
Dec. 31, 1886, the account stood: Delin-
quent tax due the fund . . §16,095.58
Cash on hand .... 5,628.21
Taxes levied due the fund . .. . 8,748.71
§30,472.50
Warrants drawn in 1886, . . §1,515.08”
That in addition to the credits above mentioned, the sum of §1,637.15 was credited to that fund by the board of county commissioners, from moneys collected from Lake county, said credit being given in October, 1886.
Following what is above quoted, there is what is termed a recapitulation of the preceding statement and a further statement as to the assessed valuation of the property of the county for specified years, which includes a statement of the warrants outstanding drawn upon the road fund for the years 1884, 1885 and 1886. These things however are simply a further illustration of what is contained in the statement already quoted, and goes no farther for the purposes of proof than that statement itself. This addition to the statement of *383 facts contained in the original opinion is simply given for the purpose of supporting the subsequent position which is taken by the writer, substantially that there was no proof whatever that there was any money in the treasury applicable to the payment of the plaintiff’s warrants.
It is not deemed expedient to follow the line of argument or the course of reasoning adopted in the opinion of the court, nor to contest by way of illustration or argument any of its positions specifically, other than the one which will be first referred to. The views of the writer will then be expressed upon the general topics necessarily embraced in the case, without any other reference or response to the position taken than that which will necessarily arise from the statement of the views which it is believed ought to control the case. The judgment is not reversed because the evidence which was introduced required the entry of a different or any other judgment than the one dismissing the complaint, nor because upon what was proven the plaintiff should have recovered. In the language of the opinion, the case is reversed because the court “ erred in refusing to grant and compel the discovery asked.”
I am unable to subscribe to that rule, or yield my assent to the position that the plaintiff was entitled to any discovery or to any equitable relief. Without yielding my assent to the proposition that, upon one cause of action stated in a single complaint and in a single count, the plaintiff may have both legal and equitable relief, when from the facts which he states it is manifest and palpable that his cause of action is one at law, it seems to me very clear that in the present case the plaintiff has neither stated an equitable cause of action, nor an action at law wherein the enforcement of his rights either requires or permits the administration of any equitable relief in any of the forms or ways formerly known to chancery practice. The plaintiff has brought an action upon county warrants which in a limited sense and for the purposes of this discussion may be called commercial paper. The opinion holds that an action of assumpsit lies upon this *384 class of instruments, and that when conceived in the form and under the circumstances where assumpsit lay at common law, such an action will he found the appropriate remedy fqr the establishment of these rights. If that be true, it would appear easily demonstrable that equitable relief could not be granted without appropriate allegations showing a necessity for such procedure. Of these the complaint contains none. It avers the issuanc'e of the warrants, their presentation for payment, and the endorsement not paid for want of funds, avers the levy of taxes for'road purposes for the years in question, asserts that there are moneys in the treasury applicable to the payment of those warrants, enough at least to cover the plaintiff’s claim, and a diversion of a portion of the fund properly belonging to the road classification to other county purposes. This complaint, which is nothing but a naked statement under the code of a cause of action upon warrants, is followed by one of the most remarkable prayers furnished by the history of code pleadings. First it prays a judgment for so much money; second, it prays that if for any cause the plaintiff be not entitled to such a judgment an accounting may be taken, and that the county government may be decreed to hold the funds for the plaintiff’s use, and be decreed to pay them over as fast as they may be collected, if they be properly appropriable to the payment of plaintiff’s claim; third, it prays that in case a diversion shall be proven that a general judgment may be granted against the county. Of course it is well understood that, under the authorities of Kayser v. Maugham, 8 Colo. 232, and Becker v. Pugh, et al., 9 Colo. 589, the prayer of the plaintiff is of no practical importance for the purpose of determining what judgment ought to be rendered. It is referred to, however, to show the legal uncertainty of the pleader in regard to the remedies to,which he was entitled, and that it is apparent that there was no equitable relief necessarily incident to his cause of action at law as he had stated it, which he sought to obtain and to which he had a right.
In the first place, from the statement of facts in the case *385 it is evident that it was not a ease wherein the action of account lay either at the common law or in equity. It was utterly impossible for the plaintiff, under well settled equitable rules, to file a bill for an accounting against the board of county commissioners and the treasurer upon the facts stated in his complaint. He holds evidences of indebtedness drawn upon a specific fund. The taxes which the county government might collect and which the treasurer received, were applicable to the payment of the plaintiff’s warrants, providing the levy was sufficient for the purpose and he occupied such a position in the order of registration as entitled him to demand the money from the treasurer. There is no question of accounting in the matter so far as the plaintiff is concerned, nor is it one of those difficult accounts upon which a court of equity will sometimes entertain a bill of this description, even though the items are all upon one side. Story’s Equity Jurisprudence, §§ 458, 459.
If the plaintiff had no right to an accounting according to his prayer, which is not adjudged by the opinion of the court, then the only equitable relief to which he could in any event have become entitled and that which the court says he had a right to is a discovery. It seems to be tolerably clear under the authorities according to the facts in this case, that the plaintiff was not entitled to that discovery. Without expressing any opinion as to the right to initiate proceedings analogous to those which prevailed in the chancery practice' prior to the adoption of the code, where a party appears by his case to be clearly within the declared law upon that subject, it is enough for the purposes of this opinion to hold that the plaintiff failed to bring himself within the well recognized rules relating to that procedure. It is said, with the concurrence of all the writers upon the subject, that to'entitle a party to a discovery he must be remediless at law, but for the discovery which he seeks. Story’s Equity, § 690.
The bill was always addressed to the defendant from whom the disclosure was sought, and if thé facts to be discovered were within the knowledge of any witness the bill did not *386 lie, nor could it be maintained when the court of law where the proceedings were pending had the means of compelling the disclosure. As was well said in one of the cases cited below: “ It was always an exceptional process, confined to the necessity of the case, and when the necessity does not exist there is no room for the practice. It has always been held that when a court of law could enforce the production of documents or any other disclosure required by a party of his adversary, that was a complete answer to a bill of discovery, and now this can be done in all cases more readily and completely than was possible by bill.” Riopelle v. Doellner, 26 Mich. 102; Nussbaum et al. v. Heilbron et al., 63 Ga. 312; Blatchley v. Coles, 6 Colo. 82.
The present case would seem to be brought entirely within the scope and purview of this adjudication. It is entirely clear that the proof essential to the plaintiff’s recovery and the only facts which could be within the knowledge of the county officials, to wit: the levy, the amount of taxes collected, the purposes to which the funds were put, the transfer of the moneys if any from one fund to another upon the books of the county, with their ultimate disposition upon warrants drawn by the board, were singly and collectively matters of record, upon the books of the county, open to the inspection of the plaintiff, and producible and provable under proper process in a court of law where the case was to be tried. Gen. Stats. 1883, § 667, p. 285; Code 1887, § 335; Bean v. The People, ex rel., 7 Colo. 200.
It cannot be expected or presumed that the county officers would have anj' knowledge of the particular facts and conditions surrounding their various funds, except as they might be disclosed by their records and proper books. They were accessible to the plaintiff, did not lie in the knowledge or the conscience of the defendants to be extracted only from them by a bill of discovery, but they were susceptible of proof by documents and books in their custody and which they could be compelled by process to produce. If this be true, and there would seem to be no escape from the conelu *387 sion, the judgment ought not to be reversed because the court refused to grant a discovery to which the plaintiff was not entitled.
I do not agree with the court either in regard to the action which ought to be brought or which is properly maintainable under the circumstances, nor as to the scope and effect of the proof offered.
The constitutional limitations upon, the power of counties to contract indebtedness have been very clearly outlined and sharply defined by recent adjudications in this state. It is entirely well settled that whenever the limit has been reached no order or warrant drawn upon the general fund of the county is or can become a valid corporate obligation, whether it be issued in satisfaction of a voluntary contract entered' into between the commissioners and the creditor, or whether the debt be incurred in the discharge of what may be termed the necessary running expenses of the county under the enactments which provide for the organization and government of such corporate bodies. Since it is shown by the stipulation, which was the only proof offered upon the trial, that Chaffee county was indebted to an extent beyond what was authorized by the constitution as construed by the courts, the plaintiff could not recover without proof that he was the holder of a warrant which was, either in terms or by the statutory condition of its issue a specific appropriation of a paticular fund thereafter to be created or then in existence, and therefore not within the scope of the constitutional inhibition. That orders may be issued which will remain .unaffected by the constitutional limitation was expressly adjudicated in one of the opinions which settled the principal doctrine. The People ex rel. Seeley v. May, 9 Colo. 80; 404.
It was there decided that there might be a specific assignment of revenues thereafter to accrue. The assignment could be made by an apt writing or it could be effected by a warrant drawn under such circumstances and in such form that the law would give to it the effect of a transfer of the funds to be subsequently collected. And there is in the *388 terms of the decision in the following language—“ it is general in form—it does not purport to be payable from any particular fund or out of the revenue from the taxes of any specified year,”—a manifest purpose to except such warrants from the operation of the rule as declared. It was an evident recognition of the general plan of the revenue statutes, which permit taxes to be levied for a specified purpose, and which, by the terms of the act authorizing the levy, limit their use and application to the payment of county obligations of a definite and particular character. Where warrants are drawn in pursuance of this plan, it must be true that they are to be taken as an exception to the expressed constitutional limitation, since they do not amount to the creation of an indebtedness against the county, but are an assignment of an appropriation of a particular fund to which alone the creditor can look for the satisfaction of his claim. Under the statutes which provide for the administration of the affairs of counties, the various boards are given power within certain limits to levy taxes for the building of roads and bridges. These revenues are to be applied to the purposes named, and those only, and they are to be paid out of the treasury on orders issued by the board, which must designate the fund on which they are drawn, and the purpose to which the money is to be devoted. The forms prescribed for the levy and collection of the tax, the methods to be pursued in its disbursement, the uses to which the wax-rants drawn upon the fund can be put, the way in which the tax can be paid, and ixi which when delinquent it may be collected, all serve to demonstrate that the road fund as such is no part of the general revexrue of the county, and although it is to be disbursed by the board which is entrusted with the government of the corporation, it is only subject to disposition by orders which may be drawxr on it as such, and that these orders amount to an appropriation by the county authorities. It is equally appax-ent that since the statute which authorizes the tax prescribes that the proceeds shall be devoted to road purposes exclusively, and shall be distributed among the *389 various road districts of the county, it amounts to a legislative appropriation fund, of which the warrant is but the legitimate and appropriate expression. Ketchum et al. v. City of Buffalo, 14 N. Y. 356; Moody v. Cass Co., 85 Mo. 477; Cooke v. Putnam Co., 70 Mo. 668; Mitchell v. Speer, 39 Ga. 56; Mayor, etc., of Hoboken v. Phinney, 29 N. J. Law 65; Hospital v. Higgins, 15 Ill. 185; People, etc., v. Power, 25 Ill. 187.
The logical result of this rule undoubtedly is that the creditor who holds his order drawn upon the road fund must look to it alone for the satisfaction of his claim, and if there be no moneys in that fund applicable to the payment of his warrant—whether because the warrant is issued for a sum exceeding the amount of the authorized levy, or because the warrants which had been registered before it was presented to the treasury for payment have absorbed all the moneys collected or collectible,—he is remediless in the premises. Such was the express adjudication in Missouri when warrants were drawn upon an internal improvement fund. The legislation in this state upon the subject of roads and highways fully justifies a similar construction. Under these circumstances a warrant drawn upon that fund is not a creation of an indebtedness within the terms of the constitutional provision, but is simply a transfer to the creditor by a body, having authority for the purpose, of so much of the moneys in the treasury belonging thereto as the order may represent. Such legislative appropriation of a portion of the revenues of a county to a definite purpose is entirely within the control of the law makers. The powers and the duties of these public corporations are wholly derived from the legislature and are subordinate to its control. The state is taken to have an interest in the revenues of the county, and because of this interest of the public in these funds the legislature must be taken to have the power to direct their application. According to these views, the defense pleaded and proven by the county of an outstanding indebtedness would not avail to defeat the action.
*390 While the plea that the county was indebted beyond the constitutional limit was no defense to the action, and would be unavailable as a plea in bar in any maintainable proceeding which might hereafter be instituted to enforce 'the liability of the county upon these warrants, there remain two insurmountable obstacles to the plaintiff’s recovery in the present suit. One arises from the form of action which he broug-ht and the relief he prayed—the other comes from a want of that proof necessary to the enforcement of his right, whatever it may be, against the county.
The plaintiff attempted in this proceeding to obtain a money judgment against the county. If recovered, it must necessarily be enforced according to the provisions of the statute concerning judgments against a county. There is the naked inquiry whether an ordinary action for the recovery of money like the old action of assumpsit may be brought against the county on these road warrants where there is money in the treasury to which the holder is entitled. On this proposition there is a very general concurrence in the opinions of the court. Some states, like Wisconsin, undoubtedly hold that an action at law may be brought directly against the county to recover the money due upon those instruments which are called warrants in general parlance, though denominated county orders by the statutes. So far as observed, however, those cases which directly adjudicate that proposition construe statutes which, contain express provisions permitting money actions to be brought on such instruments against the counties, and the decisions are expressly rested upon these enactments. In the absence of such a statute, the reasoning of those cases which holds that mandamus is the appropriate and generally the exclusive remedy is satisfactory and conclusive. All the circumstances essential to entitle a party to mandamus concur in this ease. There is a specific legal right evidenced by orders issued by the county government, which is possessed of authority to determine the justice of the creditor’s claim and his right to a warrant upon the treasury. The *391 order is drawn upon a specific fund. By the limitations which are expressed in the statute and those necessarily implied from its purpose and general provisions, the payment and the right to payment are dependent on the state of that part of the treasury. This right is still further limited by the action of the creditor in presenting his warrants for registration, for his claim is thus made dependent on the order of the record as well as the condition of the funds. Plainly a general recovery could not be had, and there can be for the creditor no other plain and adequate remedy by action. In an ordinary proceeding by suit under our system to recover money, the only judgment which can be rendered upon anything which possesses any of the elements of a promise to pay, is that the plaintiff do have and recover of the defendant so much money. It is impossible that the judgment specify and direct the treasurer to pay so much money to the plaintiff out of a road fund. It is equally impossible to enter upon the inquiry as to the number of warrants outstanding and the order of their right of precedence as against the plaintiff’s claim. These difficulties very naturally suggest the relevancy of the inquiry put in the Ohio case—“ in an ordinary civil action could a judgment be rendered which should be payable out of the funds of said school district?” These difficulties then demonstrate that the plaintiff could have no remedy by an action analogous to that of assumpsit, and that he could only obtain adequate relief by a writ of mandamus. The right to the writ under circumstances like the present is clearly established by the authorities. The State ex rel. Robertson v. Board of Education, 27 Ohio St. 96; The People ex rel. McSpedon v. Hawes, 21 How. Prac. 178; Cass Township v. Dillon, 16 Ohio St. 38; The State ex rel. v. Buffalo Co., 6 Neb. 454; The State ex rel. Van Vliet v. Wilson et al., 17 Wis. 709; Commonwealth ex rel. Whelen v. Councils of Pittsburgh, 88 Pa. St. 66; Klien v. Supervisors, 54 Miss. 254; Board of Supervisors v. Klien, 51 Miss. 808; Lake et al. v. Trustees of Williamsburg, 4 *392 Denio 520; People ex rel. Conway v. Supervisors, 68 N. Y. 114.
Although the question has not been directly adjudicated in this state, the right to the remedy has been considered by the supreme court and has been clearly settled by their adjudications. Board of Co. Comm’rs of Summit Co. v. People ex rel. Hurlburt, 10 Colo. 14; Stoddard, Treasurer, v. Benton, 6 Colo. 508.
It does not appear to me that the question discussed was either decided by the Traveller’s Insurance Company v. Denver (infra), nor that it was then before the court for determination. It would seem from the opinion that the right to maintain an action at law against the city of Denver upon warrants drawn upon the sewer fund was questioned by counsel who insisted that the remedy was by mandamus. According to the opinion, however, the case seems to have gone off upon other grounds, and to have been rested solely upon the necessity for an averment of moneys in the fund and proof to support it. It would appear impossible to urge the same objection to the maintenance of an action against -the city upon its warrants that readily suggest themselves when the legislation concerning the county organization and the creation of a road fund is considered. In the present case the difficulties seem insurmountable and to justify the .conclusion that mandamus is the only appropriate and adequate remedy.
To hold otherwise would be to enlarge the rights of the holder and give him, under the provisions of the statute relating to the enforcement of judgments against county organizations, a claim upon the general funds of the county to which he was not entitled according to the terms of his contract and the provisions of the statute, and which by necessary construction limited his right of recovery. According to section 527 of the General Statutes, whenever a judgment is rendered against the board or against the county officer no execution is to issue, but a tax is to be levied and collected for its payment as in the case of other county charges, or a *393 general warrant upon the general funds of the county may he issued to the holder by the board. According to the view hereinbefore expressed with reference to warrants drawn upon the road fund, these are rights which can under no circumstances be acquired by the holder, and which under the law the county government cannot give him. Very cogent reasons for holding that his remedy is not by an action for the recovery of money, but that he must proceed by mandamus, where the writ can direct the proper officers of the county to pay to the holder so much money as upon the hearing it may appear he is entitled to receive.
If the plaintiff had chosen the proper remedy the peremptory writ could not have been ordered on the final hearing. It will be observed that this is not and could not be under the circumstances a proceeding to compel the board of county commissioners to levy an authorized tax and apply it when collected to the satisfaction of the warrants which the plaintiff holds. If the action were in all respects regular, it could not go farther than to require the proper officer of the county to apply to the satisfaction of the warrants the proceeds of the taxes collected and in the officer’s possession. This could only be done upon both allegation and proof that moneys were in the treasurer’s hands properly applicable to the liquidation of the plaintiff’s claim. There is a radical failure in both these particulars. According to the decision in Travellers’ Insurance Company v. Denver, 11 Colo. 434, where the action is brought to recover on warrants drawn upon a special fund of a municipal corporation—it is necessary to allege that there is money in the fund with which to ]fay the warrant on which the action is brought. According to well established principles, all material allegations in a complaint must be sustained by competent proof, and if the allegation is material the proof is likewise essential. It is quite possible that by construction, if otherwise there were enough in the case to warrant a reversal, the court might hold the allegations with reference to moneys in the road fund sufficient to maintain the action, where an issue is made by answer and *394 the pleading has not been attacked by demurrer. Assuming that the complaint alleged moneys in the road fund, it must be held that the allegation was not supported by competent and sufficient proof to warrant a recoveiy.
As stated, the evidence lay in the stipulation of the parties. It nowhere appears in that stipulation that at the time of the institution of the suit, or at the time of rendition of judgment, there was money in the hands of the treasurer belonging to the road fund available for the purposes of paying the plaintiff’s warrants. The recital is “ payment thereof was refused for want of funds.” It was shown that from 1883 to 1886, warrants to the extent of §40,752.49 had been issued by the board. Such being the plaintiff’s proof concerning the situation of the warrant account, it must be assumed that these warrants were legitimate claims upon the road fund of Chaffee county, registered in some order under the statute and entitled to be paid by the treasurer. The situation which the plaintiff occupied in that list is not shown and he might have been, according to the proof, the holder of the last registered warrant. If he were in this position, he was not entitled to any relief, since he failed to prove that there was money in the fund sufficient to liquidate the antecedent registered claims. The evidence which he offered upon this subject consisted solely of a statement showing delinquent taxes due and the tax levies made for the various years, comprising the period during which his warrants were issued. This evidence cannot be held to justify a judgment against the county for a specified sum, nor could it be held to warrant the issue of a peremptory writ of mandamus to compel the treasurer to pay moneys to the plaintiff, since it neither proves nor tends to prove money in that officer’s hands. It was urged in argument that presumptively delinquent taxes were paid and that those levied were collected. Whatever force might be given, to that presumption for the purposes of determining the financial condition of the county, it does not constitute such proof of funds in the treasury as *395 would warrant a court in granting relief to a plaintiff who is charged with the burden of proving his case.
There is nothing whatever contained in the stipulation either in terms or by implication whjeh can be said to amount to an admission by the county that there was at any time within the period mentioned in the stipulation unappropriated moneys in the road fund to which the plaintiff had a right to look for payment, and should it be conceded that by any sort of construction the road fund could at any time have been deemed solvent, it equally appeared that there were outstanding warrants to the extent of the funds in the treasury, and no proof was offered upon which the court could rightfully hold that the plaintiff was entitled to recover from that fund, for he showed nothing concerning the registration of warrants which would sustain a recovery by him.
It is likewise plain that the plaintiff was not entitled to recover upon his allegations that funds had been diverted in such fashion as to entitle him to a general judgment against the county. His allegations in that regard were put in issue, and the only proof, if it can be said to rise to the dignity of evidence, which he offered was a resolution of the board directing the placing of certain moneys in the funds named in the resolution. It is exceedingly doubtful whether for the purpose of a judgment against the county that resolution can be deemed an admission to^ such an extent as to supply the place of actual proof upon the subject. It is questionable at • best whether the board of county commissioners can by such a resolution make an admission upon which a judgment can be entered. Without expressing any definite conclusion upon this subject, however, it is enough for the purposes of this dissenting opinion to say that, even though it were an admission which bound the county, it was not followed by proof of the transfer of any moneys belonging to any fund upon which the plaintiff had any claim to the general funds of the county, whereby a cause of action as for diversion accrued in his favor.
It is manifest that although the defense interposed by the *396 county was. insufficient to defeat the plaintiff’s right to recover, he was not entitled to maintain the. action which, he brought, nor was the proof which he offered sufficient to entitle him to any relief, if by amendment or construction the pleadings could be harmonized with these views concerning the proper pleadings to he taken to enforce the liability of a county on orders drawn upon road funds.
The judgment dismissing the plaintiff’s bill accords with the law, and there is no error in the record which warrants its reversal.
The judgment should he affirmed.

Reversed.